IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | | |
|---|---|---|---|
| ASHLEY D. WILEY, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | Civil Action No. 7:10cv00179 | |
| v. | ) | | |
| | ) | | |
| MICHAEL J. ASTRUE, | ) | By: | Michael F. Urbanski |
| Commissioner of Social Security, | ) | | United States District Judge |
| | ) | | |
| Defendant. | ) | | |

## MEMORANDUM OPINION

Plaintiff Ashley D. Wiley ("Wiley") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for supplemental security income ("SSI") under the Social Security Act (the "Act"). On appeal, Wiley contends that the Administrative Law Judge ("ALJ") erred by finding that she did not meet the requirements of Listing 12.05C. Having reviewed the record, it is clear that the ALJ's decision is supported by substantial evidence. Although Wiley meets the IQ prong of Listing 12.05C, substantial evidence supports the ALJ's conclusion that she does not suffer from a physical or other mental impairment imposing an additional and significant work-related limitation of function. As such, the Commissioner's decision is **AFFIRMED**, Wiley's Motion for Summary Judgment (Docket # 10) is **DENIED**, and the Commissioner's Motion for Summary Judgment (Docket # 12) is **GRANTED**.

I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d

171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security

benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Wiley was born on July 13, 1989, (Administrative Record, hereinafter "R." 51), and is considered a "younger individual" under the Act. 20 C.F.R. § 416.920(b). She attended special education classes, receiving a modified diploma. (R. 16.) Wiley does not have a driver's license as she failed the test and has outstanding fines. (R. 377, 206.) She cares for her three-year-old daughter, (R. 377), and maintains her own residence. (R. 270.) While Wiley's mother provides some assistance in caring for Wiley's daughter, she works and therefore is not always available.

---

[1] RFC is a measurement of the most a claimant can do despite his or her limitations. See 20 C.F.R. § 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after considering all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 416.929(a).

(R. 378–79.) Wiley prepares simple meals, uses public transportation, shops, takes care of her own personal needs, and cleans the house. (R. 271–73.) She also enjoys going to the park with her daughter, attending sporting events, watching movies, and regularly visiting a friend. (R. 273–74, 307.) Wiley needs assistance keeping appointments and handling large amounts of money. (R. 272–73.) The record indicates that she worked briefly in restaurants as a fast food worker and as a hostess, but the record contains inconsistencies as to whether Wiley was fired for due to performance, (R. 276, 300, 376), or whether she elected to leave as a result of babysitting issues or for another reason. (R. 206, 306, 343, 376.) Wiley testified that she does not receive mental health treatment or take any medication for any mental health issue.[2] (R. 376–77.) The record consistently indicates that Wiley has no physical limitations.

As a child, Wiley was granted disability benefits as of May 1, 2002, due to mental impairments that met the childhood mental retardation listing. (R. 219–21.) When Wiley attained majority, the Commissioner determined that Wiley was not disabled as an adult. (R. 179–213.) The decision to terminate Wiley's benefits was upheld on reconsideration, and she requested a hearing before an ALJ. (R. 375–93.) On July 23, 2009, Wiley and her mother appeared and testified before the ALJ. (R. 9–21.)

In the ensuing decision, the ALJ upheld the termination of Wiley's benefits, finding that while she had a valid IQ between 60 and 70, she did not have another physical or mental impairment "imposing additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ determined that Wiley possessed the RFC to perform a full range of work at all exertional levels with certain non-exertional limitations. (R. 17.) Specifically, the ALJ found that while Wiley is unable to perform complex or challenging work

---

[2] The record reflects that Wiley's only counseling consists of court ordered psychological counseling as a result of shoplifting charges, and brief anger management training. (R. 344.)

activities, or work in a job with high production quotas, she is able to perform simple, repetitive work in a timely and appropriate manner.  Id.  He further found her able to accept instructions from supervisors, deal appropriately with co-workers and the public, and deal with the usual stressors of work.  Id.  The Appeals Council denied Wiley's request for review on March 10, 2010, (R. 5–8), and she now seeks judicial review.

## III.

The issue in this case is whether Wiley meets the requirements of Listing 12.05, concerning mental retardation.  Listing 12.05 defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  Id.  Wiley meets this threshold definition as the record contains sufficient evidence of her mild mental retardation existing before she turned twenty-two.

Though the evidence supports this finding, an additional element is necessary to meet Listing 12.05C.  Wiley contends that she meets subpart C of Listing 12.05, which requires a valid "verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  Id.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  Plainly, Wiley meets the IQ prong of Listing 12.05C.  The only question, therefore, is whether she meets the second prong of Listing 12.05C, requiring an additional physical or mental impairment that imposes a significant work-related limitation.

There is no evidence that Wiley suffers from any physical impairment, and she argues that her anti-social behavior constitutes an additional mental impairment sufficient to meet the second prong of Listing 12.05C.  (Docket #11, at 7.)  In support of this argument, Wiley cites an

5

April 14, 2008 report by psychologist David Leen, Ph.D., where he notes a provisional[3] diagnostic impression of adult anti-social behavior. (R. 346.) Wiley also references a brief stint of anger management training, arising from angry outbursts and oppositional behavior mainly at home; court ordered psychological counseling stemming from shoplifting charges; and a note made by her eighth grade teacher regarding a tendency to become confrontational. (R. 251–53; 344.)

Although Dr. Leen's report reflects a provisional diagnostic impression of adult anti-social behavior, he did not conclude that this behavior imposed a significant work-related limitation. Dr. Leen noted that "[Wiley] is able to consistently perform relatively simple and repetitive work activities in a timely and appropriate manner," and that "she is able to complete a normal workweek without interruptions resulting from her intellectual impairments." (R. 347.) Notably, Dr. Leen found that "[Wiley] is able to accept instructions from supervisors," "deal appropriately with coworkers and the public," and "deal with the usual stressors of competitive work." Id.

Plaintiff's evidence of anti-social behavior is anecdotal at best, and pales in comparison to the evaluation performed by Dr. Leen. Considering the record as a whole, substantial evidence supports the ALJ's decision that Wiley, while afflicted with mild mental retardation, does not suffer from an additional mental impairment imposing a significant work-related limitation of function.[4]

---

[3] By specifying a diagnosis as only provisional, a clinician indicates "a significant degree of diagnostic uncertainty." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 5 (Michael B. First, M.D. ed., 4th ed. 2005). A provisional diagnosis is rendered "when there is a strong presumption that the full criteria will ultimately be met for a disorder, but not enough information is available to make a firm diagnosis." Id. at 3–4.

[4] Wiley's cites certain decisions holding that the significant work-related limitation of function requirement may be met by proof that an applicant is unable to perform past relevant work. See, e.g., Luckey v. U.S. Dept. of Health & Human Servs., 890 F.2d 666, 669 (4th Cir. 1989) (finding that a physically and mentally impaired claimant's

**IV.**

At the end of the day, it is not the province of the reviewing court to make a disability determination. Rather, it is the court's role to determine whether the Commissioner's decision is supported by substantial evidence. In this case, Dr. Leen's report provides substantial evidence to support the ALJ's decision.

Accordingly, it is **ORDERED** that the Commissioner's decision be **AFFIRMED**, that the Commissioner's Motion for Summary Judgment (Docket #12) be **GRANTED**, and Wiley's Motion for Summary Judgment (Docket #10) be **DENIED**.

Entered: July 6, 2011

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

---

inability to perform prior relevant work established the significant work-related limitation of function requirement of Listing 12.05C); Branham v. Heckler, 775 F.2d 1271, 1273 (4th Cir. 1985) (explaining that after suffering a back injury, a mentally retarded claimant "established the other, significant work-related limitation of function required by [Listing 12.05C]" from his inability to return to past relevant work alone); Flowers v. U.S. Dept. of Health & Human Servs., 904 F.2d 211 (4th Cir. 1990) (stating that a claimant with a seizure and hip disorder and mental retardation who could not return to his past relevant work had established a work-related limitation of function which met the requirements of Listing 12.05C). These cases have no application here. In each of those cases, the applicant demonstrated the existence of an additional physical impairment, not present here. In addition to the requisite IQ scores, the claimants in Luckey and Branham also had back impairments, and the claimant in Flowers had seizure and hip impairments. In contrast, substantial evidence supports the ALJ's conclusion that Wiley has no additional impairment.